United States District Court
Southern District of Texas
**ENTERED**
October 07, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| W. GRANT, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-00161 |
| | § | |
| WORLEY GROUP INC., *et al.*, | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case arises from allegations of employment discrimination and retaliation. Pending before the Court is Defendants' Opposed Motion to Compel Arbitration and To Stay or Dismiss Plaintiff's Claims. (Dkt. 13). The Court, having carefully reviewed the motion, response, and applicable law, **DENIES** Defendants' motion.

## I.    FACTUAL BACKGROUND

This factual background is taken from the pleadings and undisputed facts set forth in Defendants Worley Group Inc. and Worley's (collectively, "Worley") motion and attached exhibits and examines those facts in the light most favorable to Plaintiff W. Grant ("Grant").

Grant was employed by Worley from 2005 to 2018.[1] (Dkt. 13 at p. 1). At the beginning of his employment, Grant signed the WorleyParsons Employee Dispute

---

[1] While Grant originally lists his date of separation from Worley as 2017 in Plaintiff's Complaint, Grant later describes his employment as ending in 2018 in Plaintiff's Response in Opposition. (Dkt. 1 at pp. 3 - 9; Dkt. 16 at pp. 1 - 5). The year of termination of Grant's employment does not affect the Court's ruling on this motion.

Resolution Program Employee Agreement ("Arbitration Agreement"). (Dkt. 13 at p. 1; Dkt. 13-1 at pp. 6 - 8). By signing the Arbitration Agreement, Grant agreed to be bound by a mandatory arbitration provision covering "all claims arising out of [Grant's] employment relationship with WorleyParsons"—including race discrimination, retaliation, and defamation claims. (Dkt. 13 at pp. 2 - 3). The Arbitration Agreement required that Grant agree to these dispute resolution provisions "as amended from time to time." (Dkt. 13-1 at p. 6).

Five years after Grant and Worley's employment relationship ended, in 2023, Grant applied for another position with Worley—yet he was denied. (Dkt. 13 at p. 4). Grant brought this subsequent lawsuit against Worley asserting five causes of action alleging racial discrimination and retaliation in Worley's failure to rehire Grant, among other wrongs. (Dkt. 1). Worley promptly moved to compel arbitration under the Arbitration Agreement, to which Grant replied in opposition. (Dkt. 13; Dkt. 16).

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA")[2] requires the Court to enforce an arbitration agreement in the same manner that it would enforce any other contract. *See Specialty Healthcare Mgmt., Inc. v. St. Mary Par. Hosp.*, 220 F.3d 650, 654 (5th Cir. 2000) ("The FAA's primary goal is to place agreements to arbitrate on the same footing as other contracts." (quotation omitted)). Specifically, the FAA provides that: "A party aggrieved

---

[2] The parties agree that the FAA applies. (Dkt. 13 at p. 6); (Dkt. 16 at pp. 7 - 8).

by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

In adjudicating a motion to compel arbitration under the FAA, courts in the Fifth Circuit conduct a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996). The first step is to determine whether the parties agreed to arbitrate the dispute in question, which the court does by evaluating: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.* at 258. The second step is to determine "whether legal constraints external to the parties' agreement" foreclose the arbitration of the dispute. *Id.*

Every circuit but the Fifth Circuit utilizes the summary judgment standard of Federal Rule of Civil Procedure 56 to evaluate motions to compel arbitration under the FAA, though the Third and Eighth Circuits also appear to endorse a standard based on Federal Rule of Civil Procedure 12(b)(6) in cases where arbitrability is apparent from the face of the pleadings. *Air-Con, Inc. v. Daikin Applied Latin America, LLC*, 21 F.4th 168, 174–75 & n.7 (1st Cir. 2021) (collecting cases). The Fifth Circuit has not articulated the appropriate procedure, but district courts within it have used the Rule 56 standard. *See, e.g., Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443–44 (N.D. Tex. 2019). No party has proposed an alternative in this case, and there is no reason to think that

the Fifth Circuit will break from the other circuits, so the Court will use the commonly

employed Rule 56 procedure.

In the context of a motion to compel arbitration, the Rule 56 standard requires the

movant to present evidence sufficient to demonstrate an enforceable agreement to arbitrate.

*Jackson*, 389 F. Supp. 3d at 445 (citing *Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222,

1224 (D. Kan. 2007)). Once this burden has been met by the movant, the burden shifts to

the non-movant to raise a genuine dispute of material fact for trial. *Jackson*, 389 F. Supp.

3d at 445 (citing *Hancock v. American Telephone and Telegraph Co., Inc.*, 701 F.3d 1248,

1261 (10th Cir. 2012)).

### III.   ANALYSIS

The Court finds that Worley fails to meet its burden to demonstrate an enforceable

agreement to arbitrate. The Court holds there is not a valid agreement between the parties

to arbitrate because Worley's promise under the Arbitration Agreement is illusory. As

such, the Court does not reach any further inquiry under the FAA.

The Supreme Court has recognized a strong federal policy favoring arbitration. *See*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("[Section

2 of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration

agreements, notwithstanding any state substantive or procedural policies to the contrary.").

However, this presumption does not apply to the determination of whether a valid

agreement to arbitrate exists between the parties—that inquiry is committed to traditional

principles of state contract law. *See Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 237

(5th Cir. 2013). Under the FAA, ordinary principles of state law "governing the validity, revocability, and enforceability of contracts" determine whether there is a valid agreement to arbitrate. *Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.*, 921 F.3d 522, 530 (5th Cir. 2019). The parties agree that Texas contract law governs in this case. (Dkt. 13 at p. 7; Dkt. 16 at p. 6).

Under Texas law, "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it*." In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006). However, where a bilateral contract is only supported by illusory promises, there is no contract. *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 301–02 (Tex. 2009) (citations and quotations omitted). A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to unilaterally terminate the agreement. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009). At bottom, an arbitration clause is illusory where one party can avoid its promise to arbitrate by unilaterally amending or terminating the agreement. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (citing *Halliburton*, 80 S.W.3d at 570).

The Fifth Circuit has reasoned that a provision allowing a party to amend an arbitration retroactively renders the agreement illusory. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 208 (5th Cir. 2012). Specifically, the language at issue in *Carey* reads, in relevant part: The employer "has the right to revise, delete, and add to the employee handbook. Any such revisions to the handbook will be communicated through official

written notices." *Id*. at 204. The *Carey* court reasoned that—without a clause preventing a party from making retroactive modifications to the arbitration provision—the agreement was illusory because the language allows the employer to "unilaterally avoid its promise to arbitrate by modifying the Handbook." *Id*. at 206.

Under Texas law, where an employer is able to amend an arbitration agreement, such an agreement must have provisions preventing a party from unilaterally terminating or retroactively amending the agreement. *Halliburton*, 80 S.W.3d at 570. In *Halliburton*, the Texas Supreme Court found an arbitration agreement valid despite the employer's ability to amend the agreement because the language of the agreement prevented the employer from applying such an amendment retroactively. *Id*. Specifically, the language dictated that "no amendment shall apply to a Dispute of which the [employer] had actual notice on the date of amendment" and "termination [of the agreement] shall not be effective until 10 days after reasonable notice of termination is given to Employees." *Id*.

Since this decision in *Halliburton*, courts applying Texas law have deemed both restrictions on the retroactive application of amendments and requirements of notice prior to termination necessary to prevent arbitration agreements from being illusory. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003) (holding that the arbitration agreement at issue is illusory because the plain language of the agreement establishes the employer's unhindered right to modify or terminate the agreement without notice); *see also In re Whataburger Rests. LLC*, 645 S.W.3d 188 (Tex. 2022) (holding that a mandatory arbitration provision was not illusory because of restrictions on the employer's ability to

amend the obligation); *In re Copart, Inc.*, 619 S.W.3d 710 (Tex. 2021) (finding that a restriction on the employer's right to modify the agreement rendered the agreement not illusory); *In re Polymerica, LLC*, 296 S.W.3d 74 (Tex. 2009) (finding an agreement not illusory because the termination provision requires notice to employees and applies prospectively only).

Notably, the Fifth Circuit in *Morrison v. Amway Corp.* applied Texas law to find an agreement between a distributorship and a distributor illusory where distributors agreed to comply with rules as they are "amended and published from time to time." 517 F.3d 248, 257 (5th Cir. 2008). The *Morrison* court reasoned that this language allowed the distributorship to retroactively modify the arbitration agreement. *Id*. Without any language "which preclude[d]…eliminating the entire arbitration program or its applicability to certain claims or disputes," the distributorship's promise was found to be illusory. *Id.* Because the distributorship was able to "renege on its promise to arbitrate even in the context of disputes already underway," the court found the agreement to be unenforceable. *Carey*, 669 F.3d at 206; *Morrison*, 517 F.3d at 257.

Here, Grant argues that the Arbitration Agreement is illusory and unenforceable due to the provision allowing Worley to unilaterally amend the agreement's provisions. (Dkt. 16 at p. 6). The language at issue reads:

> "…I agree to utilize the dispute resolution provisions offered by the [Employee Dispute Resolution] Program, *as amended from time to time* and related procedures and policies."

(Dkt. 13-1 at p. 6) (emphasis added). Grant argues that this language renders Worley's promise illusory and, without a "savings clause," the language of the Arbitration Agreement allows retroactive amendments and renders Worley's promise illusory. (Dkt. 16 at pp. 7 - 8). In contrast, Worley argues that the agreement is valid because it is based on mutual promises and is therefore supported by sufficient consideration. (Dkt. 13 at p. 7). The Court is unpersuaded by Worley's argument.

The Arbitration Agreement at issue does not have restrictions on Worley's ability to amend the mandatory arbitration provision. (Dkt. 13-1 at p. 6). Instead, the language dictates that Grant agrees to "utilize the dispute resolution provisions offered …, as amended from time to time." *Id.* In this way, Worley is able to retroactively apply amendments to the Arbitration Agreement or terminate the same without notification. Further, the language at issue here ("as amended from time to time") is nearly identical to the language of the agreement found to be illusory in *Morrison* ("as they are amended and published from time to time"). (Dkt. 13-1 at p. 6); *Morrison*, 517 F.3d at 254. In this way, the language of the mandatory arbitration provision at issue allows Worley to retroactively apply unilateral amendments to the mandatory arbitration provision and "avoid its promise to arbitrate by amending the provision or terminating it altogether." *Halliburton*, 80 S.W.3d at 570. Therefore, Worley's promise is illusory and the Arbitration Agreement is invalid and unenforceable.

## IV.    CONCLUSION

The Court finds that Worley fails to meet its burden to demonstrate an enforceable agreement to arbitrate and that the Arbitration Agreement at issue is invalid. For the reasons stated above, the Court **DENIES** Defendants' Opposed Motion to Compel Arbitration and to Stay or Dismiss Plaintiff's Claims. (Dkt. 13).

SIGNED at Houston, Texas on October 7, 2024.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE